IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 3:18-CR-307-K |
| | ) | |
| DARYL ANDREW PRESTON | ) | |

## MEMORANDUM OPINION AND ORDER

By electronic order of reference dated April 8, 2020 (doc. 21), before the Court is *Defendant's Emergency Motion for Pretrial Release*, filed April 8, 2020 (doc. 20). Based on the relevant filings, the evidence of record in the prior detention hearing, and the applicable law, the motion is **DENIED**.

## I. BACKGROUND

Daryl Andrew Preston (Defendant) was convicted of conspiracy to possess with intent to distribute cocaine in the Eastern District of Texas on September 12, 2012. (*See* doc. 2 at 15.) On June 15, 2018, his supervision was transferred to this district by *Transfer of Jurisdiction* dated May 14, 2018. (*See* doc. 1.)

On November 15, 2019, Defendant was charged by criminal complaint with being a felon in unlawful and knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* No. 3:19-cr-651-K, doc. 1.) He was arrested in this district and made his initial appearance on that date. (*See id.,* doc. 6.) The Government moved to detain Defendant and for a continuance of the hearing, and the court granted the motion and ordered that Defendant be temporarily detained. (*See id.,* doc. 3, 5.)

On November 18, 2019, Defendant appeared in person and through his appointed counsel for preliminary and detention hearings. (*See id.,* doc. 8.) The Court found probable cause to

believe that he had committed the crime charged in the complaint based on testimony that after receiving credible information from two witnesses that Defendant, a convicted felon, possessed firearms, law enforcement agents obtained a search warrant for Defendant's home as well as for a telephone that Defendant had provided to a witness. (*See id.,* doc. 9.) Recovered from the home were multiple firearms, some of which were located in the master bedroom on both sides of Defendant's bed. Recovered from the telephone were photographs of a man who appeared to be Defendant shooting a gun at a gun range. The government's witness testified that Defendant stated that he had gone to the gun range with a pellet gun, but the photographs of the gun as well as of the holes on the target were inconsistent with a pellet gun. (*Id.*)

After considering the testimony of the witnesses, the arguments, the pretrial services report and the factors listed in 18 U.S.C. § 3142(g), the Court also found that the Government had met its burden to establish by clear and convincing evidence that there was no condition or combination of conditions which will reasonably assure the safety of the community and ordered Defendant detained. (*Id.* (citing 18 U.S.C. § 3142 (f)(2) (setting forth standard as clear and convincing evidence))). It noted that at the time of the alleged possession, Defendant was serving a federal term of supervised release for a drug offense, and one of his conditions of supervised release was that he not possess a firearm. Citing his continuing criminal conduct, Defendant was ordered detained pending trial. (*Id.*)

On January 27, 2020, a *Petition for Offender Under Supervision* was filed in this case, alleging that Defendant had violated his mandatory conditions of supervised release when he was arrested for possessing a firearm. (*See* doc. 6.) It also alleged that he had violated his standard conditions when he left the judicial district without permission on several occasions,

reported fraudulent income on his monthly reports, reported a false employer, and failing to secure employment. (*Id.*) He was arrested and made his initial appearance on January 30, 2020, and at a hearing the next day, he waived his right to a detention hearing pending his final revocation hearing. (*See* docs. 11, 17.)

Defendant now seeks "reconsideration of his pretrial release" in both cases and asks to be released to house arrest due to the outbreak of coronavirus, or COVID-19, at Lew Sterrett (Dallas County's jail facility), where he is being detained. (*See* doc. 20 at 1-2, 4.) He notes that the efforts to curb the outbreak at the jail have not been successful, and that the number of confirmed cases there increased from 5 on March 25, 2020, to 22 on April 7, 2020. (*Id.* at 2.) He asserts that continued confinement in Lew Sterrett violates his right to due process. (*Id.* at 3.)

## II. STANDARD FOR RECONSIDERATION[1]

Although motions for reconsideration "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (*citing United States v. Cook*, 670 F.2d 46, 48 (5th Cir.), *cert. denied*, 456 U.S. 982 (1982)); *see also United States v. Brewer*, 60 F. 3d 1142, 1143 (5th Cir. 1995) ("a motion for reconsideration ... is a judicial creation not derived from statutes or rules"). Their use in criminal proceedings has been expressly and repeatedly sanctioned. *Cook*, 670 F.2d at 48 (citations omitted). Courts have "continuing jurisdiction over criminal cases and are free to reconsider [their] earlier decisions." *United States v. Scott*, 524 F.2d 465,

---

[1]Defendant does not cite or argue any statutory basis for his motion to reconsider, such as 18 U.S.C. § 3142(f)(2) (providing for reopening of a detention hearing based on new information), 18 U.S.C. § 3142(i) (providing for temporary release based on need for preparation of defense or "another compelling reason"), or 28 U.S.C. § 636(b)(1)(A) (providing for a judge to "reconsider any pretrial matter ...where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"). His motion is therefore not construed as arising under any of those statutes.

467 (5th Cir. 1975). In the context of criminal proceedings, courts have applied the same legal standards as for motions for reconsideration in civil cases. *United States v. Williams*, No. 3:19-CR-159-S, 2019 WL 2161648, at *2 (N.D. Tex. May 16, 2019) (citations omitted); *see also United States v. CITGO Petroleum Corp.,* 908 F.Supp.2d 812, 820 (S.D. Tex. 2012).

Where a motion for reconsideration challenges a final civil judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure, or as a motion seeking relief from judgment under Rule 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 n. 14 (5th Cir.1994). Where a motion challenges an interlocutory order, it is considered under Rule 54(b). *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." In deciding motions under Rule 54(b), district courts have looked to Rule 59(e). *See WorkSTEPS, Inc. v. ErgoScience, Inc.*, 88 F. Supp. 3d 752, 758 (W.D. Tex. 2015). It "'serve[s] the narrow purposes of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). This is precisely the standard that courts have used to consider motions for reconsideration in the criminal context. *See United States v. Salinas*, 665 F.Supp.2d 717, 720 (W.D. Tex. 2009) (finding that motions for reconsideration in criminal cases "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly

4

discovered evidence."); *see also CITGO Petroleum Corp.*, 908 F.Supp.2d at 820 (applying Rule 59(e)'s standards to motion for reconsideration in a criminal case).

As the Fifth Circuit has more recently made clear in the civil context, however, a "'trial court is free to reconsider and reverse [an interlocutory order or] decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere,* 910 F.2d at 173). It has specifically noted the flexibility in Rule 54(b), which reflects courts' inherent power to provide relief from interlocutory orders and decisions "'as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n. 3 (5th Cir. 2017). Given the Fifth Circuit's finding of district courts' continuing jurisdiction over criminal cases and freedom to reconsider earlier decisions, *Scott*, 524 F.2d at 467, this more flexible standard likewise appears applicable in the context of a motion to reconsider a detention order, and it will be applied in this case.

### III. DUE PROCESS

Defendant argues that in light of the COVID-19 outbreak at Lew Sterrett, his continued pretrial detention violates his constitutional right to due process under the law, citing the Eighth Amendment. (*See* doc. 20 at 3.)[2]

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel

---

[2]COVID-19 is an infectious disease caused by a new virus, and its resulting respiratory complications have resulted in thousands of deaths around the world and in the United States. *See United States v. Morris,* No. 3:19-CR-573-B, 2020 WL 1694301, at *4 (N.D. Tex. Apr. 6, 2020) (citations omitted). According to the Center for Disease Control (CDC), persons with underlying medical conditions, such as heart disease, lung disease, diabetes, asthma, and obesity, are at a higher risk of developing serious COVID-19 illness. *See id.* (citations omitted). The CDC has acknowledged the particular challenges faced by correctional and detention facilities in controlling the transmission of COVID-19. *See id.* (citations omitted).

and unusual punishments." U.S. Const. amend. VIII. "The protections of the Eighth Amendment ... are limited in scope to convicted prisoners and do not apply to pretrial detainees" such as Defendant, however. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). A federal pretrial detainee's constitutional rights related to conditions of confinement instead flow from the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Morin*, 77 F.3d at 120. It provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.

"[P]retrial detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment." *United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989), citing *United States v. Salerno*, 481 U.S. 739, 742 (1987). "The Due Process Clause of the Fifth Amendment prohibits holding pretrial detainees under conditions that amount to punishment." *United States v. Arce*, 30 F.3d 1494, 1994 WL 399506, at *7 (5th Cir. 1994), citing *Bell*, 520 U.S. at 535. Pretrial detention in order to secure a defendant's appearance or protect the public is not punitive. *See Salerno*, 481 U.S. at 748. "Because pretrial detention under the Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process." *Hare,* 873 F.2d at 800, quoting *Salerno*, 481 U.S. at 742; *see also United States v. Stanford*, 394 F. App'x 72, 2010 WL 3448524, at *1 (5th Cir. 2010) (the due process clause "'forbids pretrial detention that is punitive, rather than regulatory, in nature'")(citing *Salerno*, 481 U.S. at 747–48)). As long as it is reasonably related to a legitimate governmental objective, pretrial detention without more does not amount to punishment; detention that is not reasonably related to a legitimate goal, or is arbitrary or purposeless, may constitute constitutionally prohibited punishment, however. *See Bell*, 520 U.S. at 539.

No court within the Fifth Circuit appears to have considered whether continued pretrial detention in light of the COVID-19 pandemic violates the Due Process Clause of the Fifth Amendment. Due Process challenges appear to have been uniformly rejected elsewhere, however. *See United States v. Shelton, et al.*, No. 3:19-cr-14, 2020 WL 1815941, at *7 (W.D. Ky. Apr. 9, 2020) (rejecting general argument that detention during the COVID-19 pandemic violated the defendant's due process rights); *United States v. Graham*, No. 19-cr-185(2) (SRN/KMM), 2020 WL 1685912, at *6 (D. Minn. Apr. 7, 2020) (noting the absence of evidence that the jail was unable to effectively monitor or treat the defendant if he contracted COVID-19, or that he was at a higher risk of contracting it in general or in custody than if released); *United States v. Knight*, No. 3:19-CR-0038-MMD-CLB, 2020 WL 1676959, at *13 (D. Nev. Apr. 6, 2020) (finding that the COVID pandemic did not change the analysis for the defendant's detention where it was reasonably related to a legitimate government interest); *United States v. Villegas*, No. 2:19-cr-568-AB, 2020 WL 1649520, at *2–3 (C.D.Cal. Apr. 3, 2020)(noting that while detention during a pandemic may seem punitive, there was no evidence of arbitrary and punitive intent where the Bureau of Prisons was responding to prevent infectious outbreak, protect inmate health, and preserve internal order); *United States v. Moran*, No. SAG-19-0585, 2020 WL 1663366, at *2 (D. Md. Apr. 3, 2020) (noting that while detaining person during a pandemic was not optimal, the measures taken by the prison facility were reasonable under the circumstances, so the defendant's allegations did not rise to the level of a constitutional violation); *United States v. McDonald*, No. 2:19-cr-00312-KJD-VCF, 2020 WL 1659937, at *3 (D. Nev. Apr. 3, 2020) (finding that the defendant's detention was reasonably related to legitimate government interests of protecting the community and ensuring his appearance at trial as outlined in the original detention order, and that the COVID-19 pandemic did not change

the analysis under the Due Process Clause); *United States v. Boatwright*, __F. Supp.3d__, 2020 WL 1639855, at *6–7 (D.Nev. Apr. 2, 2020) (rejecting general Fifth Amendment arguments that applied equally to any detainee, and noting that the prison was taking reasonable recommended precautions); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020)(rejecting Fifth Amendment arguments in light of aggressive precautions being taken by the prison to prevent the spread of COVID-19); *United States v. Cox*, __F.3d__, 2020 WL 1491180, at *6 (D.Nev. Mar. 27, 2020)(finding that the defendant's detention was reasonably related to legitimate government interests where he had been found to be a danger to the community and a flight risk, and that the COVID-19 pandemic did not change the analysis under the Due Process clause).

Here, Defendant generally asserts Lew Sterrett is "understaffed and underequipped to treat the spread of COVID-19," and that his continued detention there violates his right to due process. (*See* doc. 22 at 3.) He does not allege that he is being detained in the same part of the facility where anyone who is symptomatic or has been diagnosed with COVID-19 is being detained, that he has been exposed to anyone who is symptomatic or has been diagnosed with COVID-19, or even that he has any underlying condition that makes him more susceptible to severe illness from it. *See United States v. Wright,* No. 3:18-cr-635-N, 2020 WL 1694298, at *6 (N.D. Tex. Apr. 7, 2020), citing *United States v. Morris,* No. 3:19-CR-573-B, 2020 WL 1694301, at * (N.D. Tex. Apr. 6, 2020) (citations omitted). Nor has he alleged that Lew Sterrett is not taking reasonable measures to prevent the spread of COVID-19 or to protect him from it. In *Wright*, the court rejected a similar argument for release based in part on allegations that Lew Sterrett was unequipped to prevent transmission of COVID-19 and treat infected detainees, and that the defendant's ongoing detention

there posed an imminent threat to his life because he had an underlying medical condition. 2020 WL 1694298, at *6. It noted that "'[a]s for local pretrial detention facilities the Marshals Service contracts with, each has their own internal procedures as to how they are dealing with the COVID-19 virus and are following CDC guidelines to the best of their ability. Each facility has updated their intake procedures, which includes screening each new inmate for the COVID-19 symptoms, and will deny entry into their facility if an inmate demonstrates any symptoms.'" *Id.* at 6; *see also Morris,* 2020 WL 1694301, at *5 ("The United States Marshal's Office for the Northern District of Texas has confirmed that all of the facilities in which it houses federal detainees are implementing practices to protect detainees in accordance with CDC guidelines.").

"While Defendant's concerns about the pandemic are not without merit, that alone is insufficient to warrant release without consideration of the Section 3142(g) [detention] factors." *United States v. Okhumale*, No. 3:20-cr-122-L, 2020 WL 1694297, at *6 (N.D.Tex. Apr. 7, 2020); *see also United States v. Kerr*, No. 3:19-cr-296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) ("the court cannot not release every detainee who may be at risk of contracting COVID-19, as it would then be required to release all detainees."). Here, Defendant was detained based on a finding that he was a danger to the community due to continuing criminal conduct. He was arrested for the new offense of being a felon in possession of gun while he was serving a federal term of supervised release for a drug offense. In addition to the new arrest, the *Petition for Offender under Supervision* alleged several other violations of his conditions, including false reports of income and an employer to his supervising officer, and leaving the district and state without permission from his officer. Although not reflected in the order of detention, Defendant's pretrial services report likewise reflected arrests for new offenses while awaiting trial for other offenses and a probation

9

revocation. "The best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

As noted, Defendant waived his detention hearing and is detained pending his revocation hearing. In the context of release pending a final revocation hearing, it is Defendant's burden to establish by clear and convincing evidence that he will not pose a danger to the community. *See* Fed. R. Crim. P. 32.1(a)(6) (burden of proof is on defendant); 18 U.S.C. § 3143 (standard of proof is clear and convincing evidence). Defendant's contention that he may be released to house arrest does not rise to the level of clear and convincing evidence to meet his burden, and he has not provided a basis for reconsideration of his pretrial detention pending revocation. On this record, his continued detention despite the COVID-19 pandemic is reasonably related to legitimate government interests where he has been found to be a danger to the community based on continuing criminal conduct, and it does not violate his rights under the Due Process clause of the Fifth Amendment.

### IV. CONCLUSION

Defendant's motion is **DENIED**.

**SO ORDERED** on April 11, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE